.June Wisniewski
P. O. Box 7291
Reno, Nevada 89510-7291
renojune@hotmail.com
(775) 324-6856
Plaintiff



FILED ___ RECEIVED
ENTERED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

OCT 1 8 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| June Wisniewski,<br>    Plaintiff, ) | Docket No. 3:11- cv-00621-LRH-WGC |
| vs. ) | First Amended Complaint |
| Vitus Group, Inc., owner of<br>·Washoe Mill Apartments,<br>Washoe Mill Partners, LP, owner of<br>Washoe Mill Apartments, and its<br>General Partner, Washoe Mill<br>Management, LLC,<br>Evans Property Management, Inc.<br>Precision General Commercial<br>    Contractors, Inc.,<br>Lanz Cabinet Shop, Inc.<br>Fahrendorf, Viloria , Oliphant, &<br>    Oster, L.L.P.<br>Rosebud Forest Products Co.,<br>    Defendants ) | Jury Trial Demanded |

## JURISDICTION

1.  This court has subject matter jurisdiction over this case on the basis of a

federal question.  The question is whether the Defendants in this case have the

right to deny the Plaintiff, June Wisniewski, a reasonable accommodation because

1

of her disability and in violation of federal law. Plaintiff is alleging that the

Defendants, Vitus Group, Inc., Washoe Mill Management, LLC, the owners of

Washoe Mill Apartments, Evans Property Management, Inc., the management

company for Washoe Mill Apartments, and Precision General Commercial

Contractors, Inc., violated the Fair Housing Act (the Act) by discriminating against

the Plaintiff based on disability , 42 U.S.C. Sections 3601-3619, specifically 42

U.S.C., Section 3604(f)(3)(B) which states that is unlawful to refuse to make a

reasonable accommodation in rules, policies, practices, or services, when such

accommodation may be necessary to afford such person equal opportunity to use

and enjoy a dwelling. This court has subject matter jurisdiction over this case

pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C., Sec. 794,

implementing regulations at 24 C.F.R. Part 8 and 42 U.S.C., Sec. 3604 (f)(3)(B),

24 C.F.R., Sec. 100.204.

2. This court has subject matter of this case on the basis of a federal

question. The question is whether the Defendants in this case have the right to

deprive the Plaintiff of decent, safe, and sanitary housing that is free from

environmental hazards, in violation of 24 C.F.R. 50.3(i)(1), that all property

proposed for use in HUD programs be free of hazardous materials, contamination,

toxic chemicals and gasses, and radioactive substances, where a hazard could

affect the health and safety of occupants or conflict with the intended utilization of

the property. This code specifically mentions the toxic chemicals on the CERCLA

List, where formaldehyde and asbestos are on the CERCLA Priority List of

Hazardous Substances.

3.  This court has subject matter of this case on the basis of a federal

question.  The question is whether the Defendants are required to provide decent,

safe, sanitary HUD housing, free of health and safety hazards, operable, and in

good repair, according to 24 C.F.R. 5.703, which states that each dwelling unit

must be habitable, free of health and safety hazards, including the air quality, and

must have proper ventilation and be free of mold, odor, or other observable

deficiencies.

4.  This court has subject matter of this case on the basis of a federal

question.  The question is whether the Defendants are required to give prior

warning to the Plaintiff and other tenants according to 24 C.F.R., Section 3280.309

of the health hazards of formaldehyde emissions and the symptoms that they cause,

especially to elderly persons, which are eye, nose and throat irritation, headaches,

nausea, and a variety of asthma-like symptoms, including shortness of breath.

5.  This court has subject matter of this case on the basis of a federal

question.  The question is whether the Defendants are required to give prior

warning to the Plaintiff and other tenants according to 29 C.F.R. 1926.1101 (k),

which requires building owners to notify tenants of the presence, location, and

quantity of asbestos containing materials (ACM) and removal of ACM in writing

or a personal communication and the areas located within or adjacent to ACM.

6. The court has supplemental jurisdiction over Plaintiff's state and common

law claims pursuant to 28 U.S.C. Sec. 1367 (a) because all the other claims are

related to the original claims in this action, which is the use of toxic, poisonous,

chemicals, specifically formaldehyde, with noxious outgases in the cabinets, and

the removal and disposal of asbestos, and retaliation by the Defendants against the

Plaintiff, in violation of N.R.S.118A.510 for filing this lawsuit and reporting the

hazards to governmental agencies, such as OSHA, the City of Reno, Reno Housing

Authority, Nevada Housing Division, Washoe County Health District, the

Environmental Protection Agency (EPA)., Freddie Mac and others. In violation of

N.R.S.118A, the Defendants failed to maintain the Plaintiff's apartment in

habitable condition, put in defective fixtures and appliances, made several

unlawful entries to unreasonably harass the Plaintiff without a 24-hour notice,

failed to make necessary repairs within 14 days, and put toxic, hazardous

chemicals in Plaintiff's apartment, and removal of a toxic chemical, asbestos,

without giving Plaintiff proper notice.

7. The court has personal jurisdiction over Defendants because the damage

took place in Reno, Nevada, and one of the defendants, who is involved in the

operation, construction, management and ownership of Washoe Mill Apartments is

incorporated in Nevada. Defendants have committed tortuous acts that they knew or should have known would cause injury to the Plaintiff in the State of Nevada.

8. Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. 1391 (b)(c).

## PARTIES

9. June Wisniewski, Plaintiff, is, and at all times mentioned in this complaint, a resident at Washoe Mill Apartments, 1375 Mill Street, Apt. C-313, Reno, Nevada 89502, Washoe County, and uses the mailing address of P. O. Box 7291, Reno, Nevada 89510-7291. Plaintiff is a disabled person, a survivor of Hodgkin's Disease, a form of lymphoma cancer, and has side effects of a weak immune system, moderate short term memory loss, intolerance of toxic poisons and chemicals, and severe reactions to toxic chemical exposures.  Plaintiff's immune system is unable to process and filter out toxic chemicals such as formaldehyde, asbestos, and other materials listed on the CERCLA Priority List of hazardous substances.

10. Defendant Vitus Group, Inc., is s for-profit corporation incorporated under the laws of the State of Delaware with its principle place of business at 1700 Seventh Avenue, Seattle, Washington 98101.  Vitus is the owner of Washoe Mill Apartments and is listed as the parent company of Vitus Development, LLC, a for-profit limited liability company that is involved in the operation of Washoe Mill

Apartments and is incorporated in the State of Delaware with its principle place of business at 1700 Seventh Avenue, Seattle, Washington 98101.  Defendant Washoe Mill Partners, LP, the owner of Washoe Mill Apartments, is a limited partnership incorporated under the laws of the State of Nevada listed as the owner of Washoe Mill Apartments, with its General Partner, Washoe Mill Management, LLC, a limited liability company incorporated under the laws of the State of Nevada with their principle place of business at 1700 Seventh Avenue, Seattle, Washington 98101.  Washoe Mill Apartments is located in 1375 Mill Street, Reno, Nevada, 89502, and is a three building apartment complex with 115 units.   Washoe Mill Partners, LP, lists its General Partner as Washoe Mill Management, LLC, and Washoe Mill Management LLC, lists it Officer as Stephen R. Whyte.  The entities, Washoe Mill Partners, LP, Washoe Mill Management, LLC, and Stephen R. Whyte, list their mailing address as 1700 Seventh Avenue, Seattle, Washington 98101, with their general partners, the PNC Real Estate Tax Credit Capital Institutional Fund 47 Limited Partnership located in Portland, Oregon, with Sara Fay as the contact person.

11. Defendant Evans Property Management Inc., is a corporation incorporated under the laws of the State of California, with its principal place of business at 1000 Broadway, Suite 300, Oakland, California 94607.  EPMI is the business entity and management company for Washoe Mill Apartments, 1375 Mill

Street, Reno, Nevada 89502, with Kim Wolcott as the contact person. EPMI is financially insolvent because of a Chapter 11 bankruptcy proceeding, and three other lawsuits against them for contract disputes and violations of ADA issues.

12.  Defendant Precision General Commercial Contractors, Inc., is a corporation incorporated under the laws of the State of California with its principal place of business at 300 Turney Street, Sausalito, California, 94965. Precision is the general contract company that conducts business in the State of Nevada, and is doing all the construction work at Washoe Mill Apartments, with Thomas Dawson listed as the president of the company and contact person.

13.  Defendant Lanz Cabinet Shop, Inc., is a corporation incorporated under the laws of the State of Oregon with its principal place of business at, 3025 W.7th Place, Eugene, Oregon, 97402. Lanz conducts business in the State of Nevada, and is the company that manufactured and supplied the kitchen and bathroom cabinets to Washoe Mill Apartments, with Brent Lanz listed as the President of the company.

14.  Defendant Rosebud Forest Products Co. is a foreign corporation incorporated in the State of Oregon with its principal place of business at 10599 Old Highway 99 South, Dillard, Oregon 97432.  Rosebud manufactured the wood and particleboard shelves that were used in the kitchen and bathroom cabinets.

15.  Defendant Fahrendorf, Viloria, Oliphant, & Oster, L.L.P., is a Domestic
Limited-Liability Partnership incorporated in the State of Nevada, with its
principal place of business at 327 Callifornia Avenue, Reno, NV 89519, with a
mailing address of P. O. Box 3677, Reno, NV 89505, with Robert Fahrendorf as
the agent of service and partner in the firm. Fahrendorf directed one of their
employees, Roger Doyle to threaten and coerce the Plaintiff, terminate the
Plaintiff's lease as retaliation against the Plaintiff, hide the client(s) they represent,
and to assist unknown client(s) in hiding asbestos violations in violation of OSHA
law and to attempt to interfere with an OSHA investigation.

## NATURE OF THE CASE

16. This is an action for temporary, preliminary, and permanent injunctive
relief to prevent construction workers and contractors from entering Plaintiff's
apartment and to prevent any more toxic, hazardous, cancer-causing poisonous
chemicals from being used in and around Plaintiff's apartment.  This action is to
remove the dangerous, toxic, hazardous, cancer-causing poisonous kitchen and
bathroom cabinets containing moderate levels of formaldehyde with strong
noxious outgases from Plaintiff's apartment before any more work is done there.
This is an action to properly notify Plaintiff of the presence of asbestos, possible
mold in her heater closet, and the debris that has been dumped in Plaintiff's heater
closet.  If the asbestos is removed, proper isolation and cleaning of the area and

8

debris in her heater closet and kitchen area should be done before a heater is

installed, and proper removal and disposal of the asbestos. This is an action for

discrimination for failure to provide a reasonable accommodation to a disabled

resident, failure to provide a residence free of toxic and environment hazards,

failure to warn resident of the side effects of the toxic chemicals that the

defendants are adding and removing in Plaintiff's apartment, strict liability,

negligence, personal injury, product liability for lack of warnings of the addition of

formaldehyde and toxic sprays, adhesives, glues, bonding agents and other

hazardous chemicals, product liability for failure to use an available product

without toxic chemicals, emotional distress, fraudulent concealment, housing

discrimination, and denial of reasonable accommodations. In addition to injunctive

relief, Plaintiff seeks damages, attorneys' fees, medical expenses for present and

future injuries, reasonable accommodations and costs. Management has denied a

reasonable accommodation request and has failed to respond to a request for

Material Safe Data Sheets (MSDS) for an ingredient list of the toxic chemicals

used in and around the Plaintiff's apartment.

## STATEMENT OF FACTS

17. June Wisniewski ("Plaintiff") is a 65 year old senior that has lived at

Washoe Mill Apartments ("Washoe") in the same apartment, C-313, since

October, 1994, for over seventeen years. Plaintiff moved to Washoe to be near a

hospital while she was getting treatment for Hodgkin's Disease, a form of lymphoma cancer. Plaintiff was diagnosed with Stage 4 cancer in September, 1993, and is an eighteen year cancer survivor.

18. Washoe has three buildings and 115 apartments, housing senior, disabled, and handicapped persons. On the web site that Sara Fay ("Fay") directed Plaintiff to, Vitus is listed as the owner of Washoe. Fay is the authorized representative of Vitus Development. The owner of Washoe is listed as Washoe Mill Partners LP on the Nevada Secretary of State web site and with the Washoe County tax assessor. Washoe was purchased by Vitus Group, Inc. ("Vitus") on January18, 2011, and by Washoe Mill Partners LP, with Vitus listed as the parent company.

19. Evans Property Management, Inc. ("EPMI") was hired as the management group for Washoe, and Precision General Commercial Contractors, Inc., ("Precision") was hired to do the construction work and upgrades on Washoe in February, 2011, and subcontracted much of the work out to other contractors.

20. Precision obtained the kitchen and bathroom cabinets from the Lanz Cabinet Shop, Inc., ("Lanz") shortly after they were hired to do the construction and upgrades at Washoe, and started to install the cabinets at Washoe in April, 2011. Lanz obtained the plywood and particleboard shelves from Rosebud Forest Products Co. Precision also hired contractors to install new windows and replace

the furnaces, replace valves on the toilets, replace the stoves and refrigerators and do other construction in the apartments.

21.  Precision removed the wooden cabinets from Plaintiff's kitchen and bathroom on June 14, 2011.  The cabinets were wood, in very good condition, and did not need to be replaced.  The cabinets were donated to Habitat for Humanity. Plaintiff had to remove the contents of the cabinets, and pack all the contents of the kitchen and bathroom cabinets and the surrounding areas in the kitchen and bathroom in 20 boxes, which the Plaintiff has not unpacked because of the toxic formaldehyde outgases from the cabinets. The workers knocked out Plaintiff's phone system while she went to the rest room downstairs, and left wood chips and wood dust with formaldehyde residue all over the kitchen and bathroom floor.

22.  Plaintiff began to get sick in the afternoon shortly after the workers left. Plaintiff began having respiratory problems, severe headaches, chest tightness, rapid heartbeat, sore throat, runny nose, burning eyes, and a foggy memory.  The health problems went away about an hour or two after she left her apartment, and returned immediately when she returned to her apartment. The sinus problems became chronic after two months, and Plaintiff developed a skin rash, some loss of hearing, hair falling out in chunks, and her eyesight became worse.

23. Plaintiff made a reasonable accommodation request on June 20, 2011 to Teresa Vicente, ("Vicente") Manager of Washoe Mill Apartments, and to Sean

Brazell, ("Brazell") Project Manager, Precision General Commercial Contractors,

Inc. Washoe wrote Plaintiff a letter saying that the office forwarded the letter to

corporate office for review.  The reasonable accommodation request was later

denied by Wolcott, from EMPI, Fay, from Vitus and Brazell from Precision.

   24. No previous written or oral warning was given to the tenants in advance

regarding the toxic, hazardous, poisonous chemicals used in the manufacture of the

kitchen and bathroom cabinets, and the toxic chemicals used in the sprays and

other building materials used in the removal of the older furnaces, and the

installation of the new furnaces. Plaintiff requested the ingredients list for the toxic

glues, adhesives, and chemical sprays used, called the Material Safety Data Sheets

(MSDS) twice orally from Brazell, twice in writing from Fay and Wolcott, and

once from Vicente, but did not receive this information. The Defendants had a

safer cabinet design available, but chose to use the cabinets and shelves with the

added formaldehyde and toxic glues, adhesives, and sprays with the noxious odor.

   25.  In early September, 2011, Plaintiff obtained records from the City of

Reno regarding the building permits and information from Washoe County Health

District, Air Quality Management Division and discovered that asbestos was

located in all the apartments at Washoe and in other parts of the three buildings.

None of the tenants at Washoe were ever notified that asbestos was removed from

their apartments.  No precautionary measures were taken to shield the tenants from

the asbestos removal, or from the noxious chemicals in the form of sprays, bonding agents, adhesives, glues, and other sealants to remove the old heaters and put in the new ones. The asbestos was located in the heater closet, but the Defendants failed to tell the tenants where the asbestos was located, or to put up signs in the areas of the asbestos removal. The Defendants failed to put up the three building permits which states that asbestos was going to be removed from all areas of Washoe.

26. On July 2, 2011, Plaintiff found out that two tenants died of respiratory failure shortly after the toxic cabinets were installed in their apartments, and after the toxic sprays, glues, and adhesives were used to remove an old furnace and install a new one. One tenant died on June 29, 2011, in A-207 and the other tenant died on or about July 1, 2011, in A-313. Both tragic deaths are under investigation by the coroner's office and the one in A-313 had a coroner's seal on the door.

27. Plaintiff was never notified that asbestos was going to be removed from her apartment before any construction work was to be completed, including the installation of the heaters. Defendants were required to submit an asbestos survey before any construction work began at Washoe, as required by the Washoe County District Health Department, Air Quality Management Division. Defendants were also required to submit a hazardous material report that provides the results of testing for asbestos containing materials and other hazardous materials, such as formaldehyde. A plan and projected costs for removal of the hazardous materials

must be included, but Defendants failed to submit any such report until Plaintiff

sent an e-mail to the Nevada Housing Division requesting a copy of this report on

October 5, 2011, which is required as part of the Regulatory Agreement and

Declaration of Restrictive Covenants as required by the Nevada Housing Division

and Zions First National Bank, signed by Sara Fay on January 18, 2011. Plaintiff

denied access to the Defendants to her apartment for construction work scheduled

to begin on September 19, 2011 because she discovered that asbestos may be

located in her heater closet.  Only partial asbestos removal was listed on the

Acknowledgement of Asbestos Assessment, dated May 3, 2011, received by

Plaintiff on or about September 12, 2011.

     28.  As required by 29 C.F.R. 196.1101 (k), Defendants were required to tell

Plaintiff and all the other tenants in advance of the presence, location and quantity

of ACM (asbestos containing material) in writing or by a personal communication

between the owner and the tenant.  The owners of Washoe and their

representatives failed to notify the tenants of the presence of asbestos in their

heater closets and in other locations in the three buildings. Teresa Vicente told a

HUD representative on September 15, 2011, that there was no asbestos in the

Plaintiff's apartment, and that there was never any asbestos anywhere at Washoe.

     29.  Plaintiff called Precision and spoke with Thomas Dawson ("Dawson")

on July 5, 2011.  Plaintiff asked Dawson for a claim form to file against Precision's

insurance company because she got sick from the formaldehyde cabinets. Dawson told Plaintiff that she had to file a lawsuit to put a claim in with the insurance company, and stated that the matter could not be resolved without going to court.

30. A teleconference was held between the Plaintiff, Wolcott, and Fay on July 11, 2011, but the request and several suggestions by the Plaintiff to resolve the toxic chemical outgases in her kitchen and bathroom from the formaldehyde were not resolved, such as a ventilation system, replacement of the toxic cabinets, or requests for alternative medical treatment, such as acupuncture, that has helped the Plaintiff. Plaintiff prepared a written list of accommodations and mailed it with an allegen list made by Dr. Edwards and sent it by e-mail on July 13, 2011, to Wolcott and Fay, and received a visit at approximately 3:45 p.m. on Monday, August 29, 2011, just an hour after the lawsuit was received at EPMI's office in Oakland, CA. Wolcott threatened the Plaintiff in person and knocked on her door with no prior notice, and refused Plaintiff's request for a reasonable accommodation.

31. Plaintiff went into the emergency room at St. Mary's Hospital on July 14, 2011, because she had trouble breathing and had chest pains and congestion and thought that she had walking pneumonia. Plaintiff was diagnosed with allergic rhinitis, and was told to avoid the source of toxic contamination, which were the cabinets with the toxic formaldehyde outgases in her kitchen and bathroom. Plaintiff later discovered, on October 12, 2011, when she picked up medical

reports from her new doctor's office which stated that she have damage to her right

lung because of prior asbestos exposure, and has volume loss.

32.  Plaintiff went for an acupuncture treatment on July 15, 2011, to relieve

the formaldehyde toxicity, and stayed at another location for three days.  All of her

symptoms went away, but returned when she came back to her apartment.

33.  Plaintiff went to another doctor on August 11, 2011, and was diagnosed

with a skin rash, and sinusitis, and was told to remove herself from the source of

the irritant, the poison that was making her sick.  Plaintiff's symptoms have gotten

worse in the last ten weeks, and now the respiratory problems are chronic. Plaintiff

is still getting medical treatment for respiratory problems. Plaintiff went to The

Occupational & Environmental Medicine Clinic at the University of California-

Davis on October 13, 2011, for an evaluation regarding the toxic chemical

exposure, and is waiting for a report. Plaintiff went to another doctor on August 24,

2011, who arranged for several tests to determine whether the Plaintiff has any

heart or lung problems from the exposure. Her new doctor is out-of-town for

several weeks, but told Plaintiff that she had possible lung damage, and arranged

for a CAT scan.

34.  When the construction started in March, 2011, the tenants were told that

there would only be three days of construction.  The construction workers did not

give the Plaintiff and the other tenants a 24-hour notice when they enter the

apartments, and did not give the Plaintiff any notice when they replaced her refrigerator on May 31, 2011. The worker broke the Plaintiff's toilet when he installed a valve on April 22, 2011, causing the Plaintiff to urinate and defecate in a plastic bag for two days over the weekend because this was not considered an emergency, and the water was turned off when the worker left.

35. The Defendants replaced a nice stove with a defective one that burns food at 325 degrees, and the electric plates on the top of the stove get very hot when the oven is on, a safety hazard. There is no light in the oven like the old stove had. The old stove was donated to Habit for Humanity.

36. The refrigerator was replaced with a new defective refrigerator on May 31, 2011, that the maintenance person did not properly repair, causing over $40 worth of food to spoil. The refrigerator broke about a month after it was installed. The Plaintiff called the General Electric repair center, and a repairman came out twice and ordered and replaced a thermostat, a PCB adaptive defrost, and a heater conductor, and took apart the freezer again on August 2, 2011, and installed the new parts. The Plaintiff had to remove the contents of her refrigerator and freezer four times in two months because of the defective appliance. The old refrigerator was removed with no prior advance notice, as required by law, leaving puddles of water and mold on the floor. Plaintiff began to get sick at this time from the mold and stagnated water under the refrigerator, but management refused to clean up the

mess and a new refrigerator was put on top of the mold and water, with no one to clean up the mess.

37.  The construction workers that came out to replace the windows broke the rod on one of the venetian blinds and sprayed toxic chemicals that made the Plaintiff sick for two days.  The windows keep the apartment about five degrees cooler, but trap in the noxious outgases from the formaldehyde cabinets because there is no outside air circulation in the apartment.

38.  The construction workers have pass keys, and walk into the Plaintiff's apartment without notice.  The Plaintiff filed a police report after two workers walked into her apartment at 8:30 a.m. on June 29, 2011, with no prior notice when the Plaintiff was only wearing underpants. A worker installing carpeting entered Plaintiff's apartment at about 9:30 a.m. on September 9, 2011, with no prior notice or warning to remove a metal piece involved with the carpet installation at the front door.  The worker illegally broke into Plaintiff's apartment later that day to put back the metal piece, with no prior warning. There are constant interruptions from the construction workers with no privacy for the Plaintiff or any of the other tenants. The Plaintiff put up a "DO NOT ENTER" sign on her door after the two tenants died from respiratory failure.  The Defendants have failed to give the Plaintiff the list of hazardous toxins, the MSDS sheets that are being used in the construction work in the apartments with no safety measures or ventilation system.

39.  An energy audit was done in the Plaintiff's apartment in May, 2010 by Barbara Collins of ERH Energy. The audit showed that there was no outside ventilation in Plaintiff's apartment in any of the vents in the kitchen, bathroom, living room, and bedroom, and all the air was recirculated.  After the formaldehyde cabinets were put in, the toxic, noxious gases just stay in the kitchen and bathroom because there are no windows or vents for outside air, making the areas very toxic. The Plaintiff is suffocating from the toxic air.

40.  The Defendants installed new carpets with toxic, noxious outgases from the carpets and the glues used to install them.  Some of the Defendants bolted down the windows in the hallways where the new carpets were laid in Building A so that the tenants could not get fresh air and allow the carpets to get proper ventilation, smothering the senior and disabled tenants.

41.  The laundry room had eight washing machines, with two of them broken, and eight dryers, with four of them broken for over 3 months, in violation of N.R.S. 118A.290 and N.R.S. 118A.350 to make repairs within 14 days. The machines had been broken for over ninety days, servicing 115 apartment units. The management knew that the machines were broken, and took over ninety days to replace them.

42.  The Plaintiff requested a reasonable accommodation because of the symptoms from the materials used in her apartment or assistance in finding new

19

housing.  The Plaintiff found out from the Reno Housing Authority that there were

two one-bedroom apartments available in Golden Apartments, managed by EPMI,

and requested Wolcott twice to assist her.  Plaintiff applied for housing at Golden

Apartments in August, 2010, a year ago, but was not contacted about the openings

for housing there. Plaintiff was later told by Vicente and Wolcott that she did not

qualify for the apartments, but never received anything in writing.

43. On or about September 12, 2011, Plaintiff discovered that the

Defendants were fraudulently concealing the improper removal and disposal of the

asbestos in their heater closets.  No warning signs were put up, and the tenants

received no oral or written notice on the presence, location and quantity of asbestos

in their heater closets.

44.  Instead of answering the lawsuit, an attorney, Roger Doyle, improperly

served the Plaintiff with a Notice of Termination on or about September 29, 2011

of her lease as retaliation for failing to allow construction workers in to install a

new heater in her apartment without giving her proper notice. The attorney refused

to tell the Plaintiff who he was representing and threatened the Plaintiff at the

same time she discovered that the Defendants were removing mastic and linoleum

with 20% friable asbestos in the heater closets with no notification to the tenants of

this extremely hazardous situation.  No precautions were taken to seal off the areas

when the asbestos was removed, and there are no records available that show how

the asbestos was disposed of. There was only one inspection by Washoe County Air Quality Management Division, and it was to follow up on a complaint, and it was done on the installation of the heater, not the asbestos removal.

45. There were no inspections done by OSHA on the asbestos removal because they were not previously informed of this. OSHA visited the Plaintiff on September 30, 2011, and is now investigating the violations regarding the lack of notice to the tenants, and more asbestos violations. The Defendants are retaliating against the Plaintiff for her complaint to OSHA. The City of Reno Code Enforcement visited the Plaintiff on September 30, 2011, for code violations.

46. The Nevada Housing Division is now investigating the violations because of a request made by the Plaintiff on October 5, 2011, to get copies of the plan and projected costs for removal of hazardous materials that are required to be included in the report for Washoe for asbestos, and possibly formaldehyde. Defendants failed to submit a plan and projected costs for removal of hazardous materials before they started the construction and addition of the formaldehyde and removal of the asbestos, as required in the 2011 Qualified Allocation Plan (QAP) for Low Income Housing Tax Credits (LIHTC), in the "Additional Provisions for Rehabilitation of Existing Housing," to Nevada Housing Division.

47. Plaintiff has submitted more requests for information and documents to state, county, and federal agencies, and will continue to do so until all the questions

regarding asbestos, formaldehyde, toxic sprays, bonding agents, adhesives, and glues are answered, and until Plaintiff received copies of the MSDS sheets (material safety data sheets) are given to the Plaintiff.

48.  This complaint is a combination of federal and state claims, mostly on the toxicity and damages from the construction materials and fixtures used in and around the Plaintiff's apartment. Lanz and Rose are only involved in the Strict Liability, Negligence, and Fraudulent Concealment causes of action for formaldehyde. Plaintiff is addressing the supplemental claims for the common law and state law actions, and may remove these actions to state court if they are not heard here. Some of the same claims fall under federal and state law, and these will be addressed under federal law when applicable.  Plaintiff may be adding more Defendants because of the recent discovery of more contractors and individuals who are harming the Plaintiff and concealing information about the toxic chemicals that are added and removed at Washoe.

CAUSES OF ACTION

REASONABLE ACCOMMODATIONS FOR A DISABILITY

49.  Plaintiff refers to the allegations of paragraphs 1 to 48 and incorporates them as though fully set forth here.

50.  Plaintiff was denied reasonable accommodations to repair or replace the new defective cabinets in the kitchen and bathroom.  Defendants failed to put in a

22

ventilation system to filter out the toxic, poisonous air caused by formaldehyde.

Plaintiff was denied a reasonable accommodation to give her the list of toxic

chemicals, the Material Safety Data Sheets (MSDS), so that the Plaintiff could get

proper medical treatment for allergic rhinitis, sinusitis a skin rash, multiple

chemical sensitivity and/or toxic building syndrome, a formaldehyde allergen, and

severe respiratory and breathing problems from the toxic poisonous chemicals used

in her apartment and the common areas of the apartment complex. Plaintiff was

denied a request for reasonable accommodations to pay the additional cost to use

non-toxic sprays, glues, bonding agents, adhesives, and other products used to

install the appliances and fixtures in her apartments, including the heater.

Defendants have failed to remove and replace the cabinets with the noxious, toxic

chemical, formaldehyde, and to restore the kitchen and bathroom to its original,

non-toxic condition. The Plaintiff also has a reaction to the toxic debris that was

dumped into her heater closet, where the asbestos is located, and to the toxic

pesticides that are being sprayed in and around Washoe. Defendants are aware of

Plaintiff's disability, and refuse to accommodate her.

51. Defendant, EPMI, has a history of abusing disabled tenants. One of the

Defendants, EPMI, lost a lawsuit filed by three disabled tenants from Ocean View

Gardens, LLC.  EPMI removed accessible fixtures and replaced them with

inaccessible fixtures.  EPMI filed for Chapter 11 bankruptcy from losing this

23

lawsuit and from two other contract lawsuits, and was denied bankruptcy from the court. The court dismissed the bankruptcy proceeding. EPMI sold many properties that they owned because of their bankruptcy proceeding.

52. EPMI, together with Precision, Vitus, and Washoe Mill Partners removed beautiful wood cabinets in very good condition with no noxious chemicals and outgases from Plaintiff's apartment, and replaced the cabinets with toxic, noxious cabinets containing a toxic chemical, formaldehyde with no prior warning to the Plaintiff that a toxic chemical was going to be used.

53. Plaintiff has a weakened immune system since her cancer treatment, has neurological problems since her cancer treatment, is unable to process exposures to toxic chemicals, and is highly sensitive to toxic chemicals, pesticides, and chemicals which are not safe at any level, such as formaldehyde.

54. By refusing to grant Plaintiff's reasonable accommodation request for a removal or replacement of the toxic formaldehyde cabinets or a ventilation system to clear out the toxic air, and to restore the kitchen and bathroom to their original non-toxic condition, Defendants discriminated against the Plaintiff based on disability in violation of 42 U.S.C., Sec. 3604 (f)(3)(B), 24 C.F.R., Sec. 100.204.

55. By refusing to grant Plaintiff's reasonable accommodation request to live in decent, safe and sanitary housing that is free from environmental hazards, such as added formaldehyde, the Defendants, who are recipients of federal

financial assistance, intentionally discriminated against Plaintiff and/or showed

deliberate indifference to Plaintiff based on disability in the services related to

housing by renovating the apartment in such a way as to remove accessible

features and refuse to remedy such problems when notified, in violation of Section

504 of the Rehabilitation Act of 1973, 29 U.S.C., Sec. 794, implementing

regulations at 24 C.F.R. Part 8.

VIOLATION OF 24 C.F.R. 50.3(i)(1), NON-TOXIC PLACE TO LIVE

56.  Plaintiff refers to the allegations of paragraphs 1 to 55 and incorporates

them as though fully set forth here.

57. Plaintiff was denied the right to live in property for use in HUD

programs that is free of hazardous materials, contamination, toxic chemicals and

gasses, where a hazard could affect the health and safety of occupants or conflict

with the intended utilization of the property.  Defendants added formaldehyde to

the property, a toxic chemical, and are secretly removing asbestos without notice to

the tenants, two chemicals that are on the 2007 CERCLA Priority List of

Hazardous Substances from the Agency for Toxic Substances & Disease Registry.

58.  By refusing to remove or replace the toxic chemicals that the

Defendants have added to the fixtures and the property, and in violation of 24

C.F.R. 50.3(i) (1) the Defendants have denied the Plaintiff a safe place to live.

VIOLATION OF 24 C.F.R. 5.703, SAFE, NON-TOXIC PLACE TO LIVE

59.  Plaintiff refers to the allegations of paragraphs 1 to 58 and incorporates them as though fully set forth here.

60.  Plaintiff was denied the right to live in HUD housing that is decent, safe, sanitary, and in good repair. All areas and components of the housing must be free of health and safety hazards, including air quality.  The dwelling units and common areas must have proper ventilation and be free of mold, odor and other observable deficiencies, according to 24 C.F.R. 5.703 (f).

61.  By refusing/failing to provide good air quality and proper ventilation in areas where noxious, poisonous chemicals are used, such as formaldehyde and toxic glues and adhesives in cabinets, and new carpets and adhesives to install them, the Defendants have violated 24 C.F.R. 5.703 (f) by failing to provide an apartment and common area where the Plaintiff can breathe and be free of respiratory problems from the toxic air quality and lack of ventilation.

62.  By refusing to follow 24 C.F.R. 5.703 (f), which covers the air quality inside the dwellings and common areas, the Defendant owners of Washoe are in violation of the Regulatory Agreement and Declaration of Restrictive Covenants that Fay, representing Vitus and Washoe Mill Partners, signed on January 18, 2011 with the Nevada Housing Division to follow the laws with respect to the Uniform Physical Conditions Standards and the Americans With Disabilities Act of 1990.

63. Defendants are also in violation of 24 C.F.R. 5.703 (f) because they replaced a refrigerator with a new, defective refrigerator that Washoe failed to repair. The refrigerator was replaced with a new defective refrigerator on May 31, 2011, that the maintenance person did not properly repair, causing over $40 worth of food to spoil. The refrigerator broke about a month after it was installed. The Plaintiff called the General Electric repair center, and a repairman came out twice and ordered and replaced a thermostat, a PCB adaptive defrost, and a heater conductor, and took apart the freezer again on August 2, 2011, and installed the new parts. The Plaintiff had to remove the contents of her refrigerator and freezer four times in two months because of the defective appliance. The old refrigerator was removed with no prior advance notice, as required by law, leaving puddles of water and mold on the floor. Plaintiff began to get sick at this time from the mold and stagnated water under the refrigerator, but management refused to clean up the mess and a new refrigerator was put on top of the mold and water, with no one to clean up the mess.

64. Defendants are also in violation of 24 C.F.R. 5.703 (f) because they removed an oven and range that worked perfectly and replaced it with a defective oven that burns food at 325 degrees and has no oven light. When the oven is on, the range gets very hot and could cause serious burns if you touch the range, a health and safety issue. The workers broke Plaintiff's toilet when they put new

valves on it, broke a venetian blind, and knocked out Plaintiff's phone system. The management took over three months to replace four broken driers and 2 broken washing machines in the common area, leaving 115 units to have the use of only six washing machines and four driers for over three months, when the Regulatory Agreement that they signed with the Nevada Housing Division states that they are supposed to have one washer and one drier for every ten units. The Defendants dumped debris into the heater closet in the Plaintiff's kitchen, and left toxic, formaldehyde coated wood chips on the floor and inside the drawers after they put in the cabinets.

65. Defendants are in violation of 24 C.F.R. 5.703 and the Regulatory Agreement that Sara Fay from Vitus signed with the Nevada Housing Division because they failed to submit an asbestos removal plan and a removal plan for other hazardous materials, such as formaldehyde, at Washoe, and a plan and projected costs for removal of hazardous materials before they started any renovations and construction work.  Plaintiff alleges that the Defendants never planned to submit the asbestos plan to the Nevada Housing Division, in violation of the 2011 Qualified Allocation Plan (QAP) for Low Income Housing Tax Credits (LIHTC).

66. By refusing to provide HUD housing that is decent, safe, sanitary and in good repair, the Defendants are in violation of 24 C.F.R. 5.703.

VIOLATION OF 24 C.F.R., Sec. 3280.309, FORMALDEHYDE

67.  Plaintiff refers to the allegations of paragraphs 1 to 66 and incorporates them as though fully set forth here.

68.  Defendants failed to give Plaintiff a written warning and health notice that the materials used emit formaldehyde, and that eye, nose, and throat irritation, headache, nausea, and a variety of asthma-like symptoms, including shortness of breath, have been reported as a result of formaldehyde exposure, and that elderly persons and young children, as well as anyone with a history of asthma, allergies, or lung problems, may be at greater risk. The health notice also should have stated that reduced ventilation resulting from energy efficiency standards may allow formaldehyde and other contaminants to accumulate in the indoor air, and that additional ventilation to dilute the indoor air may be obtained from a passive or mechanical ventilation system.

69.  By failing to give the Plaintiff a notice regarding the toxic effects of formaldehyde, which should have been placed or posted on the cabinets, the Defendants violated 24 C.F.R. 3280.309.

VIOLATION OF 29 C.F.R. 1926.1101 (k), ASBESTOS REMOVAL

70.  Plaintiff refers to the allegations of paragraphs 1 to 69 and incorporates them as though fully set forth here.

71.  Defendants are in violation of OSHA law 29 C.F.R. 1926.1101 (k)(2)(ii)

and (k)(2)(ii)(D), which states:  Building and/or facility owners shall notify the

following persons of the presence, location, and quantity of ACM (asbestos

containing material) or PACM (presumed asbestos containing material), at the

work sites in their buildings and facilities. Notification either shall be in writing, or

shall consist of a personal communication between the owner and the person to

whom notification must be given or their authorized representatives: Tenants who

will occupy areas containing such material. None of the tenants were told in

advance that asbestos was going to be removed from their sheet flooring in their

heater closet in their kitchen, located about five feet from the refrigerator.

72.  Defendants are in violation of OSHA law 29 C.F.R. 1926.1101

(k)(7)(ii)(B) for failure to post warning signs bearing the following information:

DANGER, ASBESTOS, CANCER AND LUNG DISEASE HAZARD,

AUTHORIZED PERSONNEL ONLY.

73.  Defendants are in violation of OSHA law 29 C.F.R. 1926.1101 (k)(8),

which states that labels shall be affixed to all products containing asbestos and to

all containers containing such products, including waste containers.  Labels shall

be printed in large, bold letters on a contrasting background, and should state the

following information:  DANGER, CONTAINS ASBESTOS FIBERS, AVOID

CREATING DUST, CANCER AND LUNG DISEASE HAZARD.

74. The workers are also required to wear respirators and protective clothing since the amount of asbestos located in the mastic in the sheet flooring contains 20% Chrysotile and is friable, which means that the asbestos can be easily crumbled or pulverized to powder by hand. No tenants observed any workers using respirators or wearing "space suits", the protective clothing. No precautionary measures were taken, and there were never any signs posted warning about the danger of asbestos removal or disposal of asbestos.

75. There was never any inspection done by OSHA on the asbestos removal because the Defendants failed to notify OSHA about this, and there were never any inspections done by Washoe County Health District, Air Quality Management Division, when the asbestos was being removed. Plaintiff requested records from the company doing the asbestos removal, Advanced Installations, and was told that they did not have the records that Plaintiff requested. Plaintiff is alleging that Advanced Installations kept incomplete, inaccurate records regarding the asbestos removal, and that there was no outside abatement monitoring or clearance testing. Plaintiff called the Lockwood Landfill, and there are no records available to show that the asbestos from Washoe was hauled there, as mentioned on the Notification of Demolition and Renovation. Some of the tenants felt sick shortly after work was done in the heater closet, and two tenants died from respiratory failure shortly

after the asbestos was removed from their heater closets and shortly after their furnaces were installed.

76.  Plaintiff is alleging that as a direct result of the behavior of the Defendants by doing a partial removal of asbestos with no visible protective means to isolate the areas and use proper disposal of the asbestos, the Defendants caused injury to the Plaintiff and the other tenants because the asbestos fibers were spread throughout the entire three buildings and common areas, with no knowledge by any of the tenants that asbestos was being removed from the apartments and from other parts of the building.  There was no monitoring of the asbestos removal, and the Defendants still deny that there is asbestos at Washoe, even with documents from the City of Reno code enforcement and from Washoe County Health District, Air Quality Management Division and from the Limited Scope Asbestos Renovation Survey. The owners made a decision only to remove part of the asbestos.  Plaintiff is alleging that when the heaters were installed in the other units, the asbestos fibers became airborne because the older heaters would not come out easily and most of the friable asbestos was left in the heater closets. If the Defendants have nothing to hide, they would have told the tenants at one of their meeting that asbestos was going to be removed from the heater closets.

77. The OSHA investigation is still going on because of one or more violations of failure to notify the tenants of the location, presence and quantity of asbestos in their apartments, and more.

### STRICT LIABILITY (FAILURE TO WARN, ALTERNATIVE DESIGN) FORMALDEHYDE

78. Plaintiff refers to the allegations of paragraphs 1 to 77 and incorporates them as though fully set forth here.

79. Defendants put in defective cabinets in the Plaintiff's apartment that had a defective design with added formaldehyde and failed to provide any instructions or warnings about the foreseeable of harm posed by the product.

80. The duty to warn exists even though it is likely that only a small percentage of users of the product might be subject to injury. The Defendants failed to warn the Plaintiff of the hazards of formaldehyde before and when they put the cabinets in her apartments. Where a product is dangerous to all persons given sufficient concentration, a duty to warn exists if only a few hypersensitive persons have been affected by the product. The Defendants failure to warn of the danger of the product and provide adequate ventilation caused the Plaintiff's injuries. The Defendants put in a defectively designed product, the cabinets, to include high concentrations of a chemical that made extended exposure to the product unsafe with a poisonous, noxious odor. The Defendants are now installing new carpeting in all the common areas with noxious outgases, and no MSDS

33

sheets have been provided to let the Plaintiff or other tenants know what toxic chemicals are in the carpeting or adhesives.

81. Defendants put in cabinets with a moderate level of formaldehyde using toxic sprays, glues, and adhesives in Plaintiff's kitchen and bathroom with toxic chemicals that cause cancer, according to the 2011Report on Carcinogens, put out by the U.S. Department of Health and Human Services, the Public Health Service, and the National Toxicology Program. The Air Resources Board of the California Environmental Protection Agency listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure in 1992, where two of the Defendants have their main place of business. The Environmental Protection Agency (EPA) states that formaldehyde is carcinogenic when inhaled by humans, putting the Plaintiff, a cancer survivor, at an increased risk for getting throat or sinus cancer, or leukemia. Plaintiff was not told that the building materials used were poisonous and would have noxious outgases when the cabinets were put into her apartment.

82. The kitchen and bathroom cabinets had a design defect, and there was at the time of manufacture and sale of the product a feasible alternative design without formaldehyde that would probably have prevented Plaintiff's injury. Equally suitable materials which did not contain formaldehyde were available, which would have prevented or significantly reduced the risk of Plaintiff's damages without substantially impairing the utility of the cabinets, and which were

economically and technologically feasible at the time the cabinets left the control

of the manufacturing Defendants.  Plaintiff is alleging that the manufacturing

Defendants knew of the dangers of formaldehyde exposure and the emission of

formaldehyde outgases from the cabinets.

83.  An alternate design which was formaldehyde free was available at the

time the cabinets were ordered, manufactured, delivered, and installed, but the

Defendants chose to use the cabinets that injured and poisoned the Plaintiff.

Defendants installed noxious carpeting in the apartments and common areas with

noxious, toxic outgases, when non-toxic carpeting or wood floors were available,

and non-toxic adhesives, sealants, and glues were available. The omission of the

alternative, formaldehyde-free cabinets made the installed cabinets unsafe for use,

and posed an unreasonable risk of present and future harm to the Plaintiff.

84.  As a direct and proximate result of the defective condition of the

cabinets containing formaldehyde, Plaintiff suffered severe personal injuries,

specifically a chronic allergic rhinitis infection, a skin rash, severe headaches,

shortness of breath, rapid heartbeat, burning eyes, loss of hair, loss of smell,

hearing loss from the sinusitis, dizziness, memory loss, which now require constant

medical attention and a high future risk of developing cancer.

85.  But for all the Defendants action or inaction, the Plaintiff would not

have incurred the additional cost of medical monitoring and treatment resulting

exposure to formaldehyde. But For the Defendants' conduct, the Plaintiff would

not have harmed. The Defendants actions are a direct result of Plaintiff's injuries.

NEGLIGENCE - FORMALDEHYDE

86.  Plaintiff refers to the allegations of paragraphs 1 to 85 and incorporates

them as though fully set forth here.

87.  The Defendants caused physical harm by installing toxic, poisonous

cabinets with formaldehyde in the Plaintiff's apartment without a prior written

notice or warning on the toxic effects of the formaldehyde when cabinets. Glues,

adhesives, and sprays were available for ordering, purchase, and installation by the

Defendants that did not contain formaldehyde.

88. The Defendants had a duty to manufacture, purchase, and install cabinets

that were not toxic and would not harm the Plaintiff.  The Defendants breached

that duty by putting in cabinets with formaldehyde, a toxic poison that physically

harmed the Plaintiff.

89.  The Defendants owed a duty to Plaintiff to provide safe cabinets that did

not contain formaldehyde, and failed to provide any or sufficient instructions of the

dangerous properties of the cabinets, and to minimize the health risks in

minimizing the exposure to formaldehyde.  The Defendants failed to provide any

warnings about adequate ventilation to minimize the risk of exposure. Cabinets

were available that were economically and technologically feasible at the time the cabinets were ordered, manufactured, and installed.

90.   The manufacturing Defendants' breaches were a proximate, direct and/or producing cause of Plaintiff's damages. The Defendants' breaches were a proximate and direct cause of Plaintiff's damages and injuries because they deliberately ordered cabinets with formaldehyde when other formaldehyde-free cabinets were available.

91.   As a direct and proximate cause result of the defective condition of the cabinets with added formaldehyde and the formaldehyde glues, sprays, and adhesives used to install them, Plaintiff suffered severe personal injuries, specifically a chronic allergic rhinitis infection, a skin rash, severe headaches, shortness of breath, rapid heartbeat, burning eyes, loss of hair, loss of smell, dizziness, memory loss, which now require constant medical attention and a high future risk of developing cancer.

## NEGLIGENCE – ASBESTOS

92.   Plaintiff refers to the allegations of paragraphs 1 to 91 and incorporates them as though fully set forth here.

93.   Defendants removed asbestos from the apartment complex in the common areas and in the apartments, but did not remove all the asbestos.  Plaintiff is alleging that the Defendants exposed the tenants to asbestos fibers because they

95.  Defendants put the lives and the health of the Plaintiff, the tenants, and

the visitors at risk for cancer and lung disease by failing to use protective measures

to block the asbestos fibers from contaminating the area. Plaintiff has been

constantly sick from the toxic chemicals used in the construction, and the poor air

quality and debris left by the Defendants in the heater closet. So far, the

Defendants have denied that any asbestos is located in the apartment complex, and

have told HUD and other government agencies that no asbestos has ever existed at

Washoe, including Teresa Vicente, Kim Wolcott, and attorney Roger Doyle, who

represents a mystery client.  Defendants may be held liable for future damages

from the asbestos and a possible wrongful death action if anything happens to the

Plaintiff.

FRAUDULENT CONCEALMENT

Asbestos and Formaldehyde

96.  Plaintiff refers to the allegations of paragraphs 1 to 95 and incorporates

them as though fully set forth here.

97.  According to NRCP 8(a) and NRCP (9), the Defendants fraudulently

concealed or suppressed a material fact of the case, that the cabinets that they

installed in the Plaintiff's apartment had a toxic chemical in them, and was under a

duty to disclose the fact to the Plaintiff.  The Defendants intentionally concealed or

suppressed the fact with the intent to defraud the Plaintiff.

39

98. The Defendants concealed the fact that the cabinets had a toxic chemical in them that would harm the Plaintiff, and would have caused the Plaintiff to act differently if she had known that cabinets with a toxic chemical that Plaintiff was highly sensitive to and physically harms her would be installed in her kitchen and bathroom with no ventilation system. The Plaintiff was unaware of the fact that the cabinets would be toxic, and would have acted differently if she had known of the concealment or the suppressed act. The Plaintiff would have requested that the formaldehyde-free cabinets be put into her apartment, and would have paid any additional cost to put them in, or would have requested that the original cabinets remain in her apartment.

99. The Defendants installed toxic carpeting with noxious odors in the common areas. Alternative carpeting that is less toxic with less toxic adhesives could be installed, but the Defendants chose to install the toxic carpeting. Defendants are trying to install a heater in the Plaintiff's apartment with toxic, noxious sprays, glues, and/or adhesives, but have fraudulently concealed the MSDS sheets with the ingredients of the toxic chemical that they are using, even with several requests to Teresa Vicente, Kim Wolcott, and Sean Brazell. Plaintiff is willing to pay the difference for the nontoxic sprays, bonding agents, glues, and adhesives to be used in the construction projects.

100. Plaintiff went to City of Reno Permit Place and received copies of the building permits for the three buildings at Washoe. The permits said that an asbestos letter was required, and that the building permits had to be posted in a conspicuous place and that it could not be removed until all the inspections were done. The Defendants fraudulently concealed the permits from the tenants and failed to post them. Plaintiff went to the Permit Place to see if any of the toxic chemicals were listed anywhere on the record, and found out that asbestos was being removed without notice to the tenants. Plaintiff went to the Washoe County Health District, Air Quality Management Division and received documents and information during September, 2011.

101. The Defendants are in violation of the Regulatory Agreement and Declaration of Restrictive Covenants they signed with the Nevada Housing Division by creating noxious, harmful odors and creating poor air quality in the apartments and common areas of Washoe regarding the toxic cabinets they installed and the toxic carpeting they are installing. The Defendants also fraudulently concealed the asbestos removal from the agency who oversees the tax credits, the Nevada Housing Division. Defendants failed to prepare and send to the Nevada Housing Division a plan and projected cost for removal of hazardous materials, asbestos and formaldehyde, and a hazardous material report that provides the results of testing for asbestos containing materials. Defendants

breached their contractual agreement several times, but the most serious breach was fraudulently concealing the toxic chemicals that were added and removed from Washoe, formaldehyde and asbestos. Plaintiff will not let the Defendants install her heater until the asbestos issue gets resolved, especially since the Defendants deny that any asbestos is located now or was ever located at Washoe and are fraudulently concealing the removal of this toxic chemical. No precautionary measures were taken to protect the tenants from asbestos removal.

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

102.  Plaintiff refers to the allegations of paragraphs 1 to 101 and incorporates them as though fully set forth here.

103.  The Plaintiff suffered emotional distress for the actions caused by the Defendants resulting in physical injury and continual pain and suffering from a chronic respiratory infection and a continuous threat of installation of toxic chemicals that would harm the Plaintiff.

104.  The Defendants were the proximate cause of the Plaintiff's injuries by installing toxic, poisons cabinets with noxious outgases that caused physical, mental, and emotional pain to the Plaintiff, requiring constant medical care and monitoring for future damages, such as the high risk for getting cancer again.  The injury was foreseeable because the Defendants knew or should have known that the Plaintiff had a weak immune system and a high sensitivity to chemicals from

Hodgkin's Disease, a form of lymphoma caner, which was on file with her housing and medical records in the office.

105.  The Plaintiff has nightmares from being suffocated after she learned of the deaths of two tenants who died from respiratory failure after the construction work with toxic chemicals was done in their apartment, and has trouble sleeping. Plaintiff has a fear of suffocating from the toxic chemicals being used in the construction work, and the fear of becoming totally incapacitated from the toxic effects of the chemicals. The toxic effects of the chemicals were foreseeable on the Plaintiff's immune system, causing serious respiratory problems and a skin rash. Plaintiff was disabled but healthy before the toxic assault on her immune system by the formaldehyde and other toxic chemicals that are used in the construction work and toxic dust at Washoe Mill Apartments.

106.  Plaintiff 's lack of sleep, restlessness, and fear of dying a slow and painful death is caused by the threat of being exposed to asbestos fibers from the improper removal of debris and in her heater closed, and dying from cancer or a serious lung disease.  Two toxic chemicals have been fraudulently concealed from the Plaintiff and other tenants.

NRS LANDLORD TENANTS VIOLATIONVIOLATIONS FOR RETALIATION, ILLEGAL ENTRY, AND FAILURE TO MAKE REPAIRS,
107.  Plaintiff refers to the allegations of paragraphs 1 to 106 and incorporates them as though fully set forth here.

43

108. Defendants violated N.R.S. 118A.510 by refusing to make modifications for the Plaintiff by replacing toxic chemicals with nontoxic chemicals to remove and replace a heater with glues, adhesives, bonding agents, and sprays. Defendants also refuse to replace the toxic, noxious cabinets with formaldehyde outgases with nontoxic cabinets in the kitchen and bathroom, or restore the cabinets to their original condition. Plaintiff has offered to pay for the cost to make the modifications, but the Defendants have refused to do this.

109. Defendants violated N.R.S. 118A.500 by making four or more unlawful entries into Plaintiff's apartment with no prior notice, and by making repeated demands to harass the Plaintiff.

110. Defendants violated N.R.S. 118A.360 by failing to maintain the dwelling unit in a habitable condition by putting in defective cabinets in the kitchen and bathroom with toxic, noxious outgases which made the Plaintiff sick, and failing to replace the cabinets with nontoxic cabinets or use a ventilation system to get rid of the outgases. Defendants also failed to repair a new, defective refrigerator that had to be rebuilt by the General Electric repairman. None of these repair requests were completed or resolved within the 14-day time period.

111. Defendants violated N.R.S. 118A.510 by engaging in retaliatory conduct by terminating Plaintiff's lease, and put incorrect information on the lease termination, failed to serve the Plaintiff properly, and refused to meet with the

Plaintiff. Instead, Plaintiff was forced to meet with an obese, threatening attorney, more than twice the size of the Plaintiff, Roger S. Doyle of the law firm of Fahrendorf, Viloria, Oliphant & Oster on October 7, 2011. Doyle refused to tell Plaintiff who his client was, but served Plaintiff with the Termination of Tenancy. Doyle tried to force the Plaintiff to allow the heater to be put into her heater closet, but refused to tell her that the removal of the heater would disturb the friable asbestos located in the mastic in the sheet flooring, about five feet from Plaintiff's refrigerator in her kitchen. Doyle told Plaintiff that if there was asbestos located in her apartment, it was up to OSHA to tell the Plaintiff about it, not the Defendants.

112. Defendants engaged in retaliation against Plaintiff, in violation of N.R.S. 118A.510 (a)(e)(g) by terminating her lease because Plaintiff complained to OSHA, Nevada Housing Division, Reno Housing Authority, Freddie Mac, and Washoe County Health District, Air Quality Management Division, all documented. OSHA is now investigating asbestos violations. The Nevada Housing Division is now investigating the failure of the Defendants to provide a hazardous material report that provides the results of testing for asbestos containing material and other hazardous materials, and a plan and projected costs for removal of hazardous materials in advance of the construction, in violation of their tax credits that the I.R.S. is allowing.

113. Doyle misquoted the law to the Plaintiff, and engaged in collusion and conspiracy with his secret client(s), who may be one or more of the Defendants. Doyle is in violation of the Nevada Rules of Professional Conduct.  Because Doyle violated R1.2 (d) by assisting his client in engaging in conduct that the lawyer knows is criminal or fraudulent. R1.6, the confidentiality rule does not apply. Doyle's client(s) used the services of him and his law firm, Fahrendorf, Viloria, Oliphant & Oster, to commit an alleged criminal or fraudulent act, the hiding of the asbestos removal from the tenants, the alleged improper removal of the asbestos, and the alleged improper disposal of the asbestos. Doyle is in violation of R3.4(a)(b) by falsifying information on the termination of lease notice he provided to the Plaintiff , by hiding who he represents while attempting  to remove the Plaintiff from her apartment, and by fraudulently concealing the fact that asbestos is located in all the apartments at Washoe, and that the removal and disposal of it may have been done incorrectly.

114. The previous owners of Washoe, and the owner/manager, C. Reade Kaley, failed to tell the Defendants that there was asbestos in the building and was under criminal investigation last year for possible violations to get over $1.6 million in stimulus money that he failed to use to maintain Washoe.

115.  Defendants are engaging in retaliatory conduct against the Plaintiff because she is trying to stay healthy and safe.  Plaintiff is now being asked to make

a choice between her health or her housing by Defendants who are using profit

motives to harm the Plaintiff and other tenants at Washoe. Defendants are exposing

the tenants to hazardous chemicals, and giving them pizza in exchange for this.

INJUNCTIVE RELIEF

116.  Plaintiff will be seeking injunctive relief if the Defendants attempt to

use more toxic chemicals without prior knowledge to Plaintiff and without giving

Plaintiff a list of the toxic chemicals and their effects on the Material Safety Data

Sheets (MSDS) and for deliberately exposing Plaintiff to friable asbestos in the

removal of a heater in her closet filled with debris that was dumped into the closet

by the Defendants.

Plaintiff demands a jury for all claims for which a jury is permitted. There is

no other litigation involving the parties in this action.  There are no social security

numbers used in this Complaint. Plaintiff requests that all claims be heard on all

federal and state matters.  If the state claims cannot be heard here, the Regulatory

Agreement signed by Sara Fay states that the state actions will be heard in the First

Judicial District Court in Carson City for an alleged or anticipated breach of any of

the provisions or representations.

PRAYER FOR RELIEF

Plaintiff, June Wisniewski, prays for judgment against Defendants Vitus

Group, Inc., Washoe Mill Partners, Evans Property Management, Inc., Precision

47

General Commercial Contractors, Inc., Lanz Cabinet Shop, Inc., Rosebud Forest

Products Co., Fahrendorf, Viloria, Oliphant, & Oster, L.L.P. as follows:

 1.  General Damages in the amount of $11,000 or more for each Defendant

for each violation;

 2.  Special Damages for medical expense, pain and suffering.

 3.  Cost of the litigation fees, and attorney fees, if applicable;

 4.  Injunctive relief to prevent toxic chemicals such as formaldehyde, glues,

adhesives, sealants, and sprays from being used in the construction work and

replaced with non-toxic products;

 5.  Injunctive relief to prevent the removal of asbestos without proper

notification to the Plaintiff, proper posting of asbestos warning signs, proper

removal methods to prevent asbestos fibers from contaminating the air, proper

cleanup and ventilation, and proper disposal of asbestos material.

 6.  Granting of Plaintiff's request for reasonable accommodations for

replacement of toxic materials and requiring Defendants to clean up the toxic

woodchips, mold, debris in furnace closet and put up barriers to collect the debris

and dust from the construction renovation;

 7.  Granting a request for a Section 8 housing voucher because Plaintiff is

being forced to move because of threats from management and toxic chemicals and

debris in her apartment, making her apartment unlivable, or other nontoxic, safe housing as agreed on by the parties;

8.  Retain jurisdiction over defendants until such time as the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible housing accommodations as complained of herein no longer occur, and cannot recur;

9. Order Defendants to follow proper state, county, city, and federal laws for notice and removal of asbestos in the apartment and building, to post notices and warnings about asbestos removal, wear proper respirators and clothing, provide Plaintiff with a respirator, seal off the unit to prevent toxic chemicals from entering the kitchen area, clean up the debris in the furnace area;

10.  Award to Plaintiff all appropriate damages, including but not limited to compensatory damages, statutory damages, treble and/or punitive damages, in an amount within the jurisdiction of the Court;

11.  Any other relief the as this court may deem just and proper.

Dated:  October 18, 2011

*June Wisniewski*

June Wisniewski
P. O. Box 7291
Reno, Nevada 89510-7291
renojune@hotmail.com
(775) 324-6856
Plaintiff

49

## PROOF OF SERVICE

I certify that on October 18, 2011, I mailed a copy of the First Amended Complaint to the following persons:

Stephen Whyte
Vitus Group, Inc.
1700 Seventh Avenue

Brian M McMahon, Esq.
McMahon Law Offices, Ltd.
3715 Lakeside Drive
Reno, Nevada 89509

Stephen Whyte
Washoe Mill Partners, LP
1700 Seventh Avenue
Seattle, Washington 98101

Kim Wolcott
Evans Property Management, Inc.
1000 Broadway, Suite 300
Oakland, CA 94607

Thomas Dawson
Precision General Commercial Contractors, Inc.
300 Turney Street
Sausalito, CA 94965

Arthur A. Zorio, Esq.
Watson Rounds, a P.C.
5371 Kietzke Lane
Reno, NV 89511

*June Wisniewski*

June Wisniewski
P. O. Box 7291
Reno, NV 89510-7291
renojune@hotmail.com
(775) 324-6856
Plaintiff