```
               FILED          RECEIVED
               ENTERED        SERVED ON
                       COUNSEL/PARTIES OF RECORD

                      NOV - 2 2011

                   CLERK US DISTRICT COURT
                     DISTRICT OF NEVADA
          BY:                            DEPUTY
```

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| JUNE WISNIEWSKI, | 3:11-cv-00621-LRH (WGC) |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| VITUS GROUP, INC., et. al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §(b)(1)(B) and Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's Application to Proceed in Forma Pauperis (Doc. # 1)[1], and First Amended Complaint (Doc. # 5).

## I. APPLICATION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

A person may be granted permission to proceed in forma pauperis if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). "'[T]he supporting affidavits [must] state the facts as to the affiant's poverty with some particularity, definiteness, and certainty.'" *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (per curiam) (citing *Jefferson v. United States*,

---

[1] Refers to court's docket number.

277 F.2d 723, 725 (9th Cir. 1960)). The litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. du Pont De Nemours & Co.*, 335 U.S. 331, 339 (1948).

In her application, Plaintiff states she receives Social Security Disability, and has no other income. (Doc. # 1 at 1.) She has $25.00 either in cash or in a checking or savings account. (*Id.* at 2.) Her only listed asset is a 2000 Honda Civic hatchback which she values at approximately $1,300. (*Id.*) Her expenses include: (1) $317 per month in rent; (2) $140 per month for utilities; (3) $150 per month for car insurance, maintenance, and gas; (4) $100 per month in medical expenses; and (5) $150 per month in food and miscellaneous items. (*Id.*) Plaintiff has debts in the amount of $1,335. (*Id.*)

While the court cannot ascertain Plaintiff's precise ability to pay the filing fee based on the information contained within her application because she does not identify the amount of Social Security Disability she receives, the court finds it is unlikely Plaintiff would be able to pay the $350 filing fee given that she only has $25 in cash or in a checking or savings account, and taking into account the amount of Plaintiff's monthly expenses and existing debt. Therefore, Plaintiff's application to proceed in forma pauperis should be granted.

## II. SCREENING

### A. Standard

Applications to proceed in forma pauperis are governed by 28 U.S.C. § 1915, which "authorizes the court to dismiss an IFP action that is frivolous or malicious." *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (citing 28 U.S.C. § 1915(a) (citing 28 U.S.C. § 1915(d)). This provision applies to all actions filed in forma pauperis, whether or not the plaintiff is incarcerated. *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

28 U.S.C. § 1915 provides: "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Dismissal of a complaint for

failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under Section 1915(e)(2) when reviewing the adequacy of a complaint or amended complaint. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Allegations in *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *see also Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## B. Plaintiff's First Amended Complaint (pp. 1-22)

In her First Amended Complaint, Plaintiff asserts that she resided at Washoe Mill Apartments in Reno, Nevada, is disabled, and her immune system is unable to filter out toxic chemicals include formaldehyde and asbestos. (Doc. # 5 at 5.) She asserts various claims related to renovation work that took place at the apartment complex.

Plaintiff names the following Defendants: (1) Vitus Group, Inc. (Vitus), owner of Washoe Mill Apartments (Doc. # 5 at 5); (2) Washoe Mill Partners, LP, the owner of Washoe Mill Apartments, and its general partner, Washoe Mill Management, LLC (*id.* at 5-6); (3)

Evans Property Management, Inc. (EPMI), the business entity and management company for Washoe Mill Apartments (*id.* at 6-7); (4) Precision General Commercial Contractors, Inc. (Precision), the general contractor that did construction work at Washoe Mill Apartments (*id.* at 7); (5) Lanz Cabinet Shop, Inc. (Lanz), manufacturer and supplier of the kitchen and bathroom cabinets for Washoe Mill Apartments (*id.*); (6) Rosebud Forest Products Co. (Rosebud), manufacturer of the wood and particle board shelves used in the kitchen and bathroom cabinets (*id.*); and (7) Fahrendorf, Viloria, Oliphant, & Oster, L.L.P., and attorney Roger Doyle (*id.* at 8).[2]

Plaintiff seeks relief under the following theories of liability: (1) reasonable accommodations for a disability (Fair Housing Act Amendments, 42 U.S.C. § 3604(f), and, section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794); (2) violation of 24 C.F.R. § 50.3(i)(1); (3) violation of 24 C.F.R. § 5.703; (4) violation of 24 C.F.R. § 3280.309; (5) violation of 29 C.F.R. § 1926.1101(k); (6) strict liability design defect and failure to warn; (7) negligence (formaldehyde); (8) negligence (asbestos); (9) fraudulent concealment; (10) negligent infliction of emotional distress; and (11) miscellaneous state law claims including, violation of Nevada Revised Statutes (NRS) 118A.360, 118A.500, and 118A.510. (Doc. # 5.)

**C. Analysis**

**1. Reasonable Accommodations for Disability (42 U.S.C. § 3604(f) and 29 U.S.C. § 794)** (pp. 22-25)

**a. Allegations**

Plaintiff claims that Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, and Precision discriminated against her in violation of the Fair Housing Act Amendments (FHAA), 42 U.S.C. § 3601, *et. seq.*, by failing to make a reasonable accommodation for her disability. (Doc. # 5 at 22-25.) She also brings a claim under section 504 of the Rehabilitation Act of 1973 (RA), 29 U.S.C. § 794, which requires nondiscrimination

---

[2] Plaintiff often refers to "Defendants" instead of targeting a specific defendant in her allegations. Therefore, unless otherwise narrowed by Plaintiff, the court's evaluation of the claims focuses on all Defendants.

and reasonable accommodation among recipients of federal financial assistance. *See* 29 U.S.C. § 794.

Plaintiff alleges that Defendants knew of her disability yet denied her reasonable accommodation when they refused to replace the new defective cabinets in her kitchen and bathroom, and failed to put in a ventilation system to filter out the poisonous air that supposedly emanated from these cabinets. (Doc. # 5 at 22-24.) Plaintiff asserts that Defendants are recipients of federal financial assistance, and they intentionally discriminated against Plaintiff based on her disability by renovating the apartment so as to remove accessible features and refused to remedy these problems when notified they were in violation of the RA. (*Id.*)

### b. FHAA

An individual may file a civil action for an alleged violation of the FHAA. *See* 42 U.S.C. § 3613. A cause of action arising under the FHAA applies to the *sale or rental* of housing provided with federal financial assistance. 42 U.S.C. §§ 3603, 3604.

> To prevail on a claim under 42 U.S.C. § 3604(f)(3), a plaintiff must prove all of the following elements: (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

*DuBois v. Association of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006) (citations omitted).

Thus, Plaintiff states a colorable claim for violation of 42 U.S.C. § 3604(f)(3) against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, and EPMI. As to Precision, Plaintiff alleges it was a contractor performing work at the apartment complex, and therefore would not have been involved in the *sale or rental* of housing to Plaintiff. (Doc. # 5 at 7.) Accordingly, the FHAA claim should be dismissed as to Precision, with prejudice.

///

5

### c. RA

An entity that receives federal funds violates the RA if it denies a qualified individual with a disability a reasonable accommodation that the individual needs in order to enjoy meaningful access to the benefits of public services. 29 U.S.C. § 794 (a). In order to state a private cause of action under the RA, a plaintiff must establish that he or she is: (1) disabled within the meaning of the RA; (2) otherwise qualified for the benefit or service sought; (3) subject to discrimination solely by reason of the disability. *See Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (citation omitted); *Mustafa v. Clark Count School Dist.*, 157 F.3d 1169, 1174 (9th Cir. 1998) (citing 29 U.S.C. § 794(a)). She must also allege the defendant was a recipient of federal funds. *See* 29 U.S.C. § 794 (a).

Plaintiff states a colorable claim for violation of the RA against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, and Precision, whom she asserts were the recipients of federal funds (Doc. # 5 at 24-25).

### 2. Violation of 24 C.F.R. § 50.3(i)(1) (p. 25)

Plaintiff alleges she was denied the right to live in United States Department of Housing and Urban Development (HUD) housing, free from hazardous materials, contamination, toxic chemicals and gasses. (Doc. # 5 at 25.) Specifically, she claims that Defendants added toxic formaldehyde to the property and secretly removed asbestos without notice, thereby denying Plaintiff a safe place to live in violation of 24 C.F.R. § 50.3(i)(1). (*Id.*)

This regulation provides:

> It is HUD policy that all property proposed for use in HUD programs be free of hazardous materials, contamination, toxic chemicals and gasses, and radioactive substances, where a hazard could affect the health and safety of occupants or conflict with the intended utilization of the property.

24 C.F.R. § 50.3(i)(1).

The regulations set forth at 24 C.F.R. § 50.1, *et. seq.*, implement the policies of the National Environmental Policy Act (NEPA) and other environmental requirements. *See* 24 C.F.R. § 50.1(a). "NEPA (42 U.S.C. 4321 et. seq.), establishes national policy, goals and

procedures for protecting, restoring and enhancing environmental quality." 24 C.F.R. § 50.1(b).

However, 24 C.F.R. § 50.3(i)(1) does not appear to give rise to a private right of action. "[P]rivate rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001) (internal citations omitted). "Language in a regulation may invoke a private right of action *that Congress through statutory text created*, but it may not create a right that Congress has not." *Id.* at 291 (citation omitted) (emphasis added). "Thus, when a statute has provided a general authorization for private enforcement of regulations, it may perhaps be correct that the intent displayed in each regulation determine whether or not it is privately enforceable. But it is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Id.*

This regulation merely sets out a HUD policy and environmental guidelines. Accordingly, this claim should be dismissed. Plaintiff should be given leave to amend to the extent she can allege a colorable claim under a statute that provides a private right of action under these facts.

### 3. Violation of 24 C.F.R. § 5.703 (pp. 25-28)

First, Plaintiff alleges that she was denied the right to live in HUD housing that is decent, safe, sanitary, and in good repair. (Doc. # 5 at 26.) She claims that Defendants refused to provide good air quality and proper ventilation and subjected her to toxic air. (*Id.*)

Second, she contends that Defendants replaced her old refrigerator with a new defective refrigerator which they failed to repair, without notice. (Doc. # 5 at 27.) She asserts that the

removal of the old refrigerator resulted in the growth of mold, which caused her physical injury. (*Id.*)

Third, she asserts Defendants removed an oven range, replacing it with a defective oven. (Doc. # 5 at 27.) She also contends that they broke her toilet, her blinds, and knocked out her phone system. (*Id.*) They also dumped debris into the heater closet, leaving toxic, formaldehyde coated wood chips on the floor and inside drawers. (*Id.*)

Plaintiff alleges that this conduct violates 24 C.F.R. § 5.703 as well as the Regulatory Agreement and Declaration of Restrictive Covenants signed on behalf of Vitus and Washoe Mill Partners, LP, with the Nevada Housing Division to comply with the Uniform Physical Conditions Standards and the Americans with Disabilities Act of 1990 (ADA). (Doc. # 5 at 26-27.)

HUD housing "must be decent, safe, sanitary, and in good repair," and owners of HUD Housing "must maintain such housing in a manner that meets the physical conditions set forth in this section in order to be considered decent, safe, sanitary, and in good repair." 24 C.F.R. § 5.703. However, as stated above, it does not appear that HUD's implementing regulations confer a private right of action. A violation of HUD's regulations may, however, assist the court in determining whether a statute that confers a private right of action was violated. Therefore, the claim that Defendants violated 24 C.F.R. § 5.703 should be dismissed. To the extent Plaintiff can allege a colorable violation of a statute conferring a private right of action, Plaintiff should be given leave to amend.

Although Plaintiff's allegations are confusing, she asserts a violation of the ADA, Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (Section 202 of the ADA, Title II). Plaintiff has not sued a public entity, nor has she alleged the denial of benefits by a public entity. Therefore, Plaintiff's ADA claim should be dismissed with prejudice.

Insofar as Plaintiff asserts a violation of a regulatory agreement, it is not clear that Plaintiff has a private right of action given she alleges only Defendants Vitus, Washoe Mill Partners, LP, and the Nevada Housing Division were parties to the agreement. Therefore, this claim should be dismissed without prejudice. Plaintiff may amend if she can show the agreement provides her, as a tenant, with a private right of action arising from a violation of the regulatory agreement.

### 4. Violation of 24 C.F.R. § 3280.309 (formaldehyde) (p. 29)

Plaintiff alleges Defendants failed to give her written warning that materials used on the premises emit formaldehyde, and failed to warn her of the symptoms of exposure to formaldehyde. (Doc. # 5 at 29.)

24 C.F.R. § 3280.309 is a regulation promulgated by HUD that governs *manufactured home construction* and applicable safety standards. *See* 24 C.F.R. § 3280.1. Plaintiff alleges she lived in an *apartment*, and not a manufactured home. (*See, e.g.,* Doc. # 5 at 4-5.) Accordingly, this claim should be dismissed with prejudice.

### 5. Violation of 29 C.F.R. § 1926.1101(k) (asbestos removal) (pp. 29-33)

Plaintiff makes various allegations about the impropriety of the asbestos removal at the apartment complex. (*See* Doc. # 5 at 30-32.)

29 C.F.R. § 1926.1101 governs the regulation of asbestos exposure in the *workplace*. Plaintiff cannot maintain this claim under the facts alleged in the First Amended Complaint, which involves alleged exposure to asbestos at an *apartment complex*. This claim should be dismissed with prejudice.

### 6. Strict Liability Design Defect and Failure to Warn (pp. 33-36)

This cause of action is the first of several state law claims Plaintiff asserts. If this court has jurisdiction over the federal claims, as it does herein, the court may exercise supplemental jurisdiction over the state law claims for relief. 28 U.S.C. § 1367 (a); *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).

Plaintiff asserts a claim against "Defendants" for strict liability design defect and failure to warn in connection with the kitchen and bathroom cabinets, without identifying which defendant she is targeting in this cause of action. (Doc. # 5 at 33-35.) She also appears to make a similar claim with respect to the carpet installation. (Doc. # 5 at 33.) Plaintiff claims she suffered personal injuries as a result of the formaldehyde-containing cabinets, including a chronic allergic rhinitis infection, skin rash, loss of hair, loss of smell, hearing loss from sinusitis, dizziness, and memory loss. (*Id.* at 35.) She asserts that she has undergone medical monitoring and treatment as a result of her exposure. (*Id.* at 35-36.)

The Nevada Supreme Court has extended an action for strict liability in tort to all products. *See Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135, 138, 86 Nev. 408, 413 (Nev. 1970) (citation omitted). A strict products liability action requires a plaintiff to establish: (1) defendant placed a defective product on the market; (2) the defect caused plaintiff's injury; and (3) the defect existed when the product left the hands of defendant. *See Allison v. Merck & Co.*, 878 P.2d 948, 952, 110 Nev. 762, 767 (Nev. 1994)(citation omitted); *Shoshone Coca-Cola Co. v. Dolinski*, 420 P.2d 855, 858, 82 Nev. 439, 443 (Nev. 1966); *Ginnis*, 470 P.2d at 138, 86 Nev. at 413. The proper defendants in strict products liability cases are manufacturers and distributors. *Id.* (citations omitted) ("Although manufacturers are not insurers of their products, where injury is caused by a defective product, responsibility is placed upon the manufacturer and the distributor of the defective product rather than on the injured consumer.").

A product is "defective," when it is "dangerous because [it] fail[s] to perform in the manner reasonably expected in light of [its] nature and intended function." *Id.* (internal quotation marks and citation omitted). The defect must also be "unreasonably dangerous." *See Lewis v. Sea Ray Boats, Inc.*, 65 P.3d 245, 249, 119 Nev. 100, 107 (Nev. 2003). In addition, "[a] product may be found unreasonably dangerous and defective if the manufacturer failed to provide an adequate warning." *Rivera v. Philip Morris, Inc.*, 209 P.3d 271, 275 125 Nev. 18 (Nev. 2009) (citation omitted); *see also Shoshone*, 420 P.2d at

859 ("failure to give proper warning, under all legal theories, renders a product 'defective'"). To successfully prove a failure-to-warn case, a plaintiff must produce evidence demonstrating the same elements as in other strict product liability cases[.]" *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges Defendant Lanz manufactured and supplied the kitchen and bathroom cabinets to Washoe Mill Apartments. (Doc. # 5 at 7.) She also asserts that Defendant Rosebud manufactured the wood and particle board shelves that were used in the kitchen and bathroom cabinets. (*Id.*) Plaintiff states a colorable claim for strict products liability regarding the cabinets as to Defendants Lanz and Rosebud. Plaintiff does not state a claim as to Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, or Precision because they did not manufacture or supply the products. *See Calloway v. City of Reno*, 993 P.2d 1259, 1272, 116 Nev. 250, 270-271 (Nev. 2000).

Plaintiff does not identify the manufacturer or seller of the carpet, and therefore any claim for strict products liability, based either on the theory that the product itself was defective or that there was a failure to warn, should be dismissed without prejudice.

### 7. Negligence (formaldehyde) (pp. 36-37)

Plaintiff asserts "Defendants" (again, without identifying which defendants) had a duty to manufacture, purchase, and install cabinets that were not toxic, and breached that duty by installing toxic cabinets with formaldehyde without warning, proximately causing physical injury. (Doc. # 5 at 36-37.)

To state a claim for negligence under Nevada law, a plaintiff must establish: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injuries; and (4) plaintiff suffered damages. *Scialabba v. Brandise Construction Co.*, 921 P.2d 928, 930, 112 Nev. 965, 968 (Nev. 1996) (citation omitted).

Plaintiff states a colorable claim for negligence against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, Precision, Lanz and Rosebud.

**8. Negligence (asbestos)** (pp. 37-39; p. 38 is missing)

Plaintiff alleges "Defendants" negligently exposed tenants to asbestos fibers when they failed to use protective measures when removing asbestos from the common areas and apartments. (Doc. # 5 at 37-38.)

The elements of a negligence cause of action in Nevada are stated above. It appears a page is missing from Plaintiff's First Amended Complaint, so the court cannot discern all of Plaintiff's allegations relative to this claim. Moreover, Plaintiff does not identify who performed the asbestos removal without taking proper protective measures. Therefore, this claim should be dismissed without prejudice.

**9. Fraudulent Concealment (asbestos and formaldehyde)** (pp. 39-42)

Plaintiff argues that "Defendants" fraudulently and intentionally concealed that the cabinets installed in Plaintiff's apartment contained formaldehyde when they had a duty to disclose this material fact to Plaintiff. (Doc. # 5 at 38.) She claims this was done with the intent to defraud Plaintiff, and she would have acted differently had she known the cabinets contained formaldehyde. (*Id.* at 39.) Plaintiff further alleges that Defendants concealed other toxic chemicals being used in the renovations, as well as the building permits for the premises, and the asbestos removal. (*Id.* at 40-42.)

"Intentional misrepresentation is established by three factors: (1) a false representation that is made with either knowledge or belief that it is false or without sufficient foundation; (2) an intent to induce another's reliance; and (3) damages that result from this reliance." *Nelson v. Heer*, 163 P.3d 420, 123 Nev. 217, 225 (Nev. 2007) (citation omitted). Plaintiff states a colorable claim for fraudulent concealment of the formaldehyde in the cabinets against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, and Precision.

1 Plaintiff does not assert how she was damaged by any alleged fraudulent
2 concealment of asbestos removal. Therefore, the claim for fraudulent concealment of the
3 asbestos removal should be dismissed without prejudice. Plaintiff should be given leave to
4 amend to allege the element of damages with respect to the asbestos removal.

5 **10. Negligent Infliction of Emotional Distress** (pp. 42-43)

6 Plaintiff alleges that she suffered and continues to suffer from emotional distress as
7 a result of Defendants' conduct. (Doc. # 5 at 42.) She claims Defendants knew or should
8 have known of her weak immune system and high sensitivity to chemicals, and history of
9 cancer. (*Id.* at 42-43.) She has nightmares about two tenants who she claims died from
10 exposure to toxic chemicals, and her own fear of injury from exposure. (*Id.* at 43.) This
11 caused Plaintiff to suffer respiratory problems and a skin rash, lack of sleep, restlessness,
12 and fear or dying. (*Id.*)

13 To the extent Plaintiff asserts a "bystander" theory of negligent infliction of
14 emotional distress relative to her knowledge that two tenants allegedly died of exposure to
15 toxic chemicals, this claim must be dismissed because Nevada law requires that Plaintiff be
16 a close relative to the victim of the accident. *See Grotts v. Zahner*, 989 P.2d 415, 115 Nev.
17 339 (Nev. 1999) (non-family relationship fails as a matter of law to qualify for bystander
18 theory); *Crippens v. Sav On Drug Stores*, 961 P.2d 761, 114 Nev. 760 (Nev. 1998).
19 Therefore, this claim should be dismissed with prejudice.

20 A plaintiff asserting a direct theory of negligent infliction of emotional distress must
21 establish: (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty;
22 (3) the breach was the legal cause of the plaintiff's injuries; and (4) plaintiff suffered
23 serious emotional distress. *Olivero v. Lowe*, 995 P.2d 1023, 116 Nev. 395 (Nev. 2000).
24 While there is some question whether Plaintiff's alleged emotional distress was "serious,"
25 the factual allegations of the First Amended Complaint state a colorable claim under a
26 direct theory of negligent infliction of emotional distress against Defendants Vitus, Washoe
27 Mill Partners, LP, Washoe Mill Management, LLC, EPMI, and Precision.
28

**11. NRS 118A.360, 118A.500, and 118A.510 and miscellaneous state law claims** (pp. 43-47)

First, Plaintiff alleges a violation of NRS 118A.510. She claims that her lease was terminated in retaliation for her complaints to OSHA, Nevada Housing Division, Reno Housing Authority, Freddie Mac, and the Washoe County Health District. (Doc. # 5 at 45.)

Plaintiff is asserting a claim for retaliatory eviction, governed by NRS 118A.510, which prohibits, among other things, a landlord from terminating a tenancy in retaliation for a tenant's good faith complaint of a housing violation, and provides for the recovery of actual damages. Nev. Rev. Stat. 118A.510, 118A.390(1). While Plaintiff names the law firm Fahrendorf, Viloria, Oliphant & Oster, L.L.P., and attorney Roger Doyle, her claim for retaliatory eviction pertain primarily to her landlord and the property management company. Therefore, the court finds Plaintiff states a colorable claim for violation of NRS 118A.510 against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, and EPMI.

Second, Plaintiff alleges Defendants violated NRS 118A.500 by making four or more unlawful entries into Plaintiff's apartment, without proper notice, and by harassing Plaintiff. (Doc. # 5 at 44.)

NRS 118A.500 provides for injunctive relief and the recovery of actual damages in the event of "unlawful entry or a lawful entry in an unreasonable manner" by a landlord, or if a landlord "makes repeated demands for entry otherwise lawful but which have the effect of unreasonably harassing the tenant[.]" Nev. Rev. Stat. 118A.500. Plaintiff therefore states a colorable claim for violation of NRS 118A.500 against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, and Precision.

Third, Plaintiff alleges Defendants violated NRS 118A.360, by failing to maintain her dwelling in a habitable condition. (Doc. # 5 at 44.) Plaintiff states a colorable claim for breach of the implied warranty of habitability, which is governed by NRS 118A.355 and NRS 118A.360, against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill

1 | Management, LLC, and EPMI.

2 | Finally, Plaintiff alleges that attorney Roger Doyle misquoted the law, engaged in collusion, conspiracy, and criminal conduct with his clients, in violation of the Nevada Rules of Professional Conduct. (Doc. # 5 at 46.) Plaintiff surmises that Mr. Doyle's client is one of the Defendants and asserts that they used his services to commit a crime by hiding the removal and improper removal and disposal of asbestos. (*Id.*) He also alleges that Mr. Doyle violated the Code of Professional Conduct by falsifying information on the lease termination and concealing the fact that asbestos is located in the apartments. (*Id.*)

To the extent Plaintiff is asserting a claim based on alleged violation of the Nevada Rules of Professional Conduct by Roger Doyle, this claim should be dismissed with prejudice. The ethical rules governing lawyers do not create a private cause of action for civil damages. *See Mainor v. Nault*, 101 P.3d 308, 321, 120 Nev. 750, 769 (Nev. 2004). To the extent Plaintiff asserts that Roger Doyle or any other defendant engaged in criminal conduct, those allegations are not properly part of a civil complaint for damages, and should be dismissed. Accordingly, Fahrendorf, Viloria, Oliphant, & Oster, L.L.P., and attorney Roger Doyle should be dismissed from this action without prejudice, as Plaintiff fails to state any claim upon which relief may be granted against them.

### III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED THAT**:

(1) Plaintiff's requests to proceed in forma pauperis (Doc. # 1) should be **GRANTED.** The Clerk of the Court should be instructed to **FILE** the First Amended Complaint (Doc. # 5). The movant herein should be permitted to maintain this action to conclusion without the necessity of prepayment of fees or costs or the giving of security therefor. The order granting in forma pauperis status should not extend to the issuance of subpoenas at government expense;

(2) Plaintiff should be allowed to proceed with her claim under the FHAA, 42 U.S.C. § 3604(f)(3), against Defendants Vitus, Washoe Mill Partners, L.P., Washoe Mill

1  Management, LLC, and EPMI;

2  (3) Plaintiff's claim that Defendant Precision violated the FHAA, 42 U.S.C. §
3  3604(f)(3), should be **DISMISSED WITH PREJUDICE**;

4  (4) Plaintiff should be allowed to proceed with the claim of violation of the RA, 29
5  U.S.C. § 794(a), against Defendants Vitus, Washoe Mill Partners, L.P., Washoe Mill
6  Management, LLC, EPMI, and Precision;

7  (5) Plaintiff's claim for violation of 24 C.F.R. § 50.3(i)(1) should be **DISMISSED**
8  **WITHOUT PREJUDICE**. Plaintiff should be given leave to amend to the extent she can
9  allege a colorable claim under a statute that provides a private right of action under these
10 facts;

11 (6) Plaintiff's claim for violation of 24 C.F.R. § 5.703 should be **DISMISSED**
12 **WITHOUT PREJUDICE**. To the extent Plaintiff can allege a colorable violation of a
13 statute conferring a private right of action under these facts, Plaintiff should be given leave
14 to amend;

15 (7) To the extent Plaintiff asserts a claim under the ADA, it should be **DISMISSED**
16 **WITH PREJUDICE**;

17 (8) Insofar as Plaintiff asserts a violation of a regulatory agreement, this claim
18 should be **DISMISSED WITHOUT PREJUDICE**;

19 (9) Plaintiff's claim that Defendants violated 24 C.F.R. § 3280.309 should be
20 **DISMISSED WITH PREJUDICE**;

21 (10) Plaintiff's claim that Defendants violated 29 C.F.R. § 1926.1101 should be
22 **DISMISSED WITH PREJUDICE**;

23 (11) Plaintiff should be allowed to proceed with her claim for strict products liability
24 design defect and failure to warn regarding the cabinets as to Defendants Lanz and
25 Rosebud. This claim should be **DISMISSED WITH PREJUDICE** as to Defendants
26 Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, and Precision;

27 (12) Plaintiff's claim of strict liability regarding the carpet installation should be

28

**DISMISSED WITHOUT PREJUDICE**;

(13) Plaintiff should be allowed to proceed with her claim for negligence (formaldehyde) against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, Precision, Lanz and Rosebud;

(14) Plaintiff's claim for negligence related to asbestos removal should be **DISMISSED WITHOUT PREJUDICE**;

(15) Plaintiff's claim for fraudulent concealment of the formaldehyde in the cabinets should be allowed to proceed against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, and Precision;

(16) Plaintiff's claim for fraudulent concealment of the asbestos removal should be **DISMISSED WITHOUT PREJUDICE**;

(17) To the extent Plaintiff asserts a bystander theory of negligent infliction of emotional distress, this claim should be **DISMISSED WITH PREJUDICE**;

(18) To the extent Plaintiff asserts a direct theory of negligent infliction of emotional distress, this claim should be allowed to proceed against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, and Precision;

(19) Plaintiff should be allowed to proceed with her claim for violation of NRS 118A.510 against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, and EPMI;

(20) Plaintiff should be allowed to proceed with her claim for violation of NRS 118A.500 against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, EPMI, and Precision;

(21) Plaintiff should be allowed to proceed with her claim of breach of the implied warranty of habitability under NRS 118A.355 and NRS 118A.360 against Defendants Vitus, Washoe Mill Partners, LP, Washoe Mill Management, LLC, and EPMI;

(22) Plaintiff's claim based on alleged violation of the Nevada Rules of Professional Conduct by Fahrendorf, Viloria, Oliphant, & Oster, L.L.P., and attorney Roger Doyle,

1  should be **DISMISSED WITH PREJUDICE**;

2  (23) Plaintiff's claims of criminal conduct should be **DISMISSED WITH PREJUDICE**;

4  (24) Failing to state any claim upon which relief may be granted as to Fahrendorf, Viloria, Oliphant, & Oster, L.L.P., and attorney Roger Doyle, these defendants should be **DISMISSED WITHOUT PREJUDICE**;

7  (25) Plaintiff is advised that pursuant to Local Rule 15-1, if she chooses to file a second amended complaint, it shall be complete in itself without reference to any previous complaint. Plaintiff should be given thirty (30) days from the date of the order adopting the Report and Recommendation within which to file a second amended complaint remedying, if possible, the defects in the First Amended Complaint explained above. Any allegations, parties, or requests for relief from prior papers that are not carried forward in the second amended complaint will no longer be before the court. Plaintiff is cautioned that if she fails to file a second amended complaint within the time period specified above, the action will proceed on the First Amended Complaint, and only with respect to those claims which the court allows to proceed. Plaintiff shall clearly title the second amended complaint as such by placing the words "SECOND AMENDED COMPLAINT" on page 1 in the caption, and plaintiff shall place the case number, **3:11-CV-00621-LRH-WGC**, above the words "SECOND AMENDED COMPLAINT" in the space for "Case No."

DATED:  November 1, 2011.

_____
UNITED STATES MAGISTRATE JUDGE